CLERK'S OFFICE
A TRUE COPY
Oct 17, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
the person of Sanantonio Aikens (DOB: 11/05/2000) and any effects, bags, or containers on AIKENS's person or within AIKENS's immediate control or reach

Case No. 22-M-558 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the Eastern District of Wisconsin *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 10-31-22 *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m. ❒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Stephen C. Dries, United States Magistrate Judge.
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ______________.

Date and time issued: 10-17-22 1:05 pm

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, Wisconsin

Stephen C. Dries, United States Magistrate Judge
*Printed name and title*

## Return

| Case No.: 22-M-558 | Date and time warrant executed: 10/17/2022 6:12PM | Copy of warrant and inventory left with: Sanantonio AIKENS |
|---|---|---|

Inventory made in the presence of : SA Rick Connors

Inventory of the property taken and name(s) of any person(s) seized:

One (1) Pink iPhone XR cell phone with a cracked front and back.

AIKENS photo ID

black "Lay Anderson" CashApp card

Receipt from Paladin Protection Armory

Wisconsin handgun hotline form

One Taurus handgun, model G2C, 9mm, bearing serial number ADE336808 (with box)

Century Arms RomArm Cugir pistol (AK-47 Style pistol), model Micro-Draco, caliber 7.62X39mm, bearing serial number ROA 22 PMD-31419 (with box)

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 3/14/2025

GABRIEL LOWRANCE Digitally signed by GABRIEL LOWRANCE Date: 2025.03.14 10:18:01 -05'00'

*Executing officer's signature*

SA Gabe Lowrance

*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is the person of Sanantonio Aikens (DOB: 11/05/2000) and any effects, bags, or containers on AIKENS's person or within AIKENS's immediate control or reach.

**ATTACHMENT B**

*Property to be seized*

1. All records relating to violations of 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(a)(6) (straw buying); 18 U.S.C. § 922(g)(3) (possession of a firearm or ammunition by prohibited person), 18 U.S.C. § 922(d) (knowingly sell or give to prohibited person) and 18 U.S.C. § 371 (conspiracy), those violations involving Sanantonio AIKENS (DOB: 11/05/2000) and occurring after April 1, 2020, including:

a. ATF Forms 4473, firearms, firearm boxes, bipods, tripods, receipts and any records related to firearms, firearms accessories, ammunition, financial documents that show a transfer of proceeds of the above schemes, computers, electronics capable of storage, communication, and/or internet access, and cellphones;

b. lists of contacts and any identifying information;

c. photographs, videos, or other media storage connected to firearms;

d. any information about types, amounts, and prices of firearms purchased/sold;

e. any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

f. all bank records, checks, credit card bills, account information, and other financial records related to firearms commerce;

g. any and all financial records connected to the purchase/sale of firearms and any correspondence between suspects and other firearms sellers and/or purchasers;

h. proceeds of firearm trafficking activities, including United States currency;

i. all bank records, checks, credit card bills, account information, and other financial records, documents, statements, or other evidence related to financial accounts and investment funds;

j. personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm trafficking activities;

k. records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

l. Records and information relating to a conspiracy to violate the laws of the United States, including the scope, manner, means, objects, overt acts, and identity of any co-conspirators;

m. Records and information relating to the dealing in firearms without a license;

n. Records and information relating to drug use, including but not limited to the possession and use of marijuana;

o. Records and information relating to the transfer of firearms to a prohibited person;

p. Records and information about making a false statement to a federal firearms licensee;

q. Records and information relating to the identity, residence, or location of Sanantonio Aikens;

2. Computers or storage media used as a means to commit the violations described above.

3. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

i. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

ii. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the lack of such malicious software;

iv. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

v. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

vi. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

vii. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

viii. evidence of the times the COMPUTER was used;

ix. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

x. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

xi. records of or information about Internet Protocol addresses used by the COMPUTER;

xii. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

xiii. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

During the execution of the search described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of Sanantonio Aikens to the fingerprint scanner of the device; (2) hold a device found in front of the face of Sanantonio Aikens and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

CLERK'S OFFICE
A TRUE COPY
Oct 17, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

the person of Sanantonio Aikens (DOB: 11/05/2000) and any effects, bags, or containers on AIKENS's person or within AIKENS's immediate control or reach

Case No. 22-M-558 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C § 922(a)(1)(A), 922(a)(6), 922(g)(3), 922(d), and 371 | engaging in a firearms business without a license, straw buying, possession of a firearm or ammunition by prohibited person, knowingly sell or transfer to a prohibited person, and conspiracy to violate the laws of the United States |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

GABRIEL LOWRANCE Digitally signed by GABRIEL LOWRANCE Date: 2022.10.17 13:02:17 -05'00'

*Applicant's signature*

Gabriel Lowrance, Special Agent (ATF)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 10/17/2022

*Judge's signature*

City and state: Milwaukee, Wisconsin

Stephen C. Dries, United States Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Gabriel Lowrance, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the person of Sanantonio Aikens (DOB: 11/05/2000) and any effects, bags, or containers on AIKENS's person or within AIKENS's immediate control or reach, further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since January 2020. I have been employed as a full-time law enforcement officer for approximately 14 years. I have received training at the Federal Law Enforcement Training Center in Glynco, Georgia. I attended the Criminal Investigator Training Program, as well as ATF's Special Agent Training Program. I have received training in the investigation of unlawful possession of firearms, the unlawful transfer of firearms, and the unlawful dealing in firearms without a dealers' license. Prior to becoming a Special Agent with the ATF, I received an associate's degree from Olney Central College in Administration of Criminal Justice.

3. Prior to my employment with ATF, I was a Police Officer with the Robinson Police Department (RPD) in Robinson, Illinois. During my tenure with RPD, I worked as a Patrol Officer investigating and handling various calls for service. Before that, I graduated from the Western Arizona Law Enforcement Training Academy in Lake Havasu City Arizona. I served as a police officer with the Lake Havasu City Police Department (LHCPD). During my tenure with LHCPD, I worked as a Patrol Officer investigating and handling various calls for service.

4. I have received training in the investigation of firearm and drug trafficking. Based on my training, experience, and participation in firearm trafficking investigations, I know and/or have observed the following:

a. I have utilized informants to investigate firearm and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations distribute these items in Wisconsin and elsewhere.

b. I have also relied on informants to obtain firearms (as opposed to licensed gun dealers) and controlled substances from individuals on the streets, known as a controlled purchase.

c. I have experience conducting street surveillance of individuals engaged in firearm and drug trafficking. I have participated in the execution of numerous search warrants where drugs, firearms, ammunition, and magazines have been seized.

d. I am familiar with the language utilized over the telephone to discuss firearm and drug trafficking, and know that the language is often limited, guarded, and coded.

e. I know that firearm and drug traffickers often use electronic equipment to conduct these operations.

f. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

g. I know that firearm and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses.

h. I know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement officials. I also know that firearm and drug traffickers may keep photographs of these items on electronic devices.

5. I have participated in multiple firearm and drug trafficking investigations that

involved the seizure of computers, cellular phones, cameras, and other digital devices, and the subsequent analysis of electronic data stored within those computers, cellular phones, cameras, and other digital devices. In many instances, the electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

7. I am currently participating in an investigation of firearm trafficking involving Sanantonio (NMI) AIKENS (DOB: 11/05/2000). Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that AIKENS has committed violations of 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(a)(6) (straw purchasing); 18 U.S.C. § 922(g)(3) (possession of a firearm or ammunition by a prohibited person), 18 U.S.C. § 922(d) (knowingly sell or give to prohibited person), and 18 U.S.C. § 371 (conspiracy).

8. On October 11, 2022, I searched for firearms trafficking leads within multiple law enforcement databases.

9. Firearm trafficking refers to the movement of firearms from lawful purchasers and entities to those who are prohibited from possessing firearms. I know that firearm "time-to-crime" refers to the amount of time that has passed from the date the firearm was purchased up until the

date that same firearm is recovered during the commission of a crime. I know from training and experience that a firearm having a low time-to-crime is indicative of firearms trafficking or straw purchasing. Straw purchasing refers to the action of a person purchasing a firearm on behalf of a prohibited person. I am that the national time-to-crime based on crime gun data from 2020 is 7.01 years in the United States. Wisconsin has an average time-to-crime for crime guns of 5.81 years, and Illinois has an average time-to-crime for crime guns of 6.70 years. I am aware that firearms purchased by AIKENS have had time-to-crimes of 2, 3, 9, and 36 days, which is well below the averages. This is indicative of firearms trafficking.

10. On October 11, 2022, I reviewed the firearms trace history and firearm sale forms for AIKENS. I noted that AIKENS, who is currently 21 years old, purchased 46 firearms in a three-month period. I also noticed that AIKENS purchased multiple firearms on the same day and often purchased similar types of firearms based on the make, model, and caliber. In my training and experience, high volume, high velocity, and repetitive purchasing are all indicators of straw purchasing or dealing in firearms without a license.

11. I have provided an overview of AIKENS's known firearms purchases between March 2022 and October 2022. Case agents conducted a canvass of local federal firearms licensees. For each of the firearms listed below, AIKENS affirmed on the Firearms Transaction Record (ATF Form 4473) that he was the actual buyer of the firearm, that he was not an unlawful user or addicted to marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance, and provided the address of 1520 55th Street, Kenosha, Wisconsin.

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| May 22, 2022 | Dunham's Sports (#9236) (5600 Durand Avenue, Racine, Wisconsin) | Glock Model 19x 9x919 caliber pistol | BWZK118 | $629.99 |
| May 23, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model G19 G5 9mm caliber pistol | BWGP436 | Receipt not provided at time of affidavit |
| May 23, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Paladin Protection Armory Model PAR15 5.56 NATO caliber rifle | PAR15-00033 | Receipt not provided at time of affidavit |
| July 10, 2022 | Dunham's Sports (#9236) (5600 Durand Avenue, Racine, Wisconsin) | Glock Model 45 9x19 caliber pistol | BTAE138 | $579.99 |
| July 11, 2022 | Dunham's Sports (#9236) (5600 Durand Avenue, Racine, Wisconsin) | Glock Model 48, 9x19 caliber pistol | BVXN185 | $479.99 |
| July 11, 2022 | Dunham's Sports (#9236) (5600 Durand Avenue, Racine, Wisconsin) | Glock Model 20 GEN4 10mm auto caliber pistol | BWHF209 | $649.99 |

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| July 11, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model G17 Gen5 9mm caliber pistol | BVGC793 | Receipt not provided at time of affidavit |
| July 17, 2022 | Dunham's Sports (#9236) (5600 Durand Avenue, Racine, Wisconsin) | HS Produkt Model Hellcat, 9mm caliber pistol | BA512324 | $649.99 |
| July 17, 2022 | Dunham's Sports (#9236) (5600 Durand Avenue, Racine, Wisconsin) | Sarsilmaz/Sarusa , Model B6 9x19 caliber pistol | T1102-21E63397 | $324.99 |
| July 31, 2022 | The Shooters Sports Center Inc (4900 Six Mile Road, Racine, Wisconsin) | Aero Model X15 receiver multi-caliber | X508195 | $109.99 |
| August 7, 2022 | The Shooters Sports Center Inc (4900 Six Mile Road, Racine, Wisconsin) | Aero Precision, Model X15 receiver multi-caliber | X508188 | $109.99 |
| August 7, 2022 | The Shooters Sports Center Inc (4900 Six Mile Road, Racine, Wisconsin) | Aero Precision, Model X15 receiver multi-caliber | X508199 | $109.99 |

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| August 8, 2022 | Dunham's Sports (#9236) (5600 Durand Avenue, Racine, Wisconsin) | Taurus Armas/ Taurus Model G3 9mm caliber pistol | ADC057390 | See footnote[1] |
| August 9, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model G21 .45 auto caliber pistol | AGSH762 | Receipt not provided at time of affidavit |
| August 9, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model G20 Gen4 10mm caliber pistol | BXHE817 | Receipt not provided at time of affidavit |
| August 14, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Taurus Model G3c 9mm caliber pistol | ADB942643 | Receipt not provided at time of affidavit |

[1] On August 8, 2022, AIKENS attempted to purchase the above firearm from the Dunham's Sports (#9236) (5600 Durand Avenue, Racine, Wisconsin). However, he was denied the sale. The ATF Form 4473 indicates "Deny Indefinitely 08/08/2022 per [Redacted name of employee of Dunham's Sports]."

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| August 15, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Anderson Manufacturing, Model AM-15 multi-caliber receiver | 22015149 | Receipt not provided at time of affidavit |
| August 15, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Anderson Manufacturing, Model AM-15 multi-caliber receiver | 22015138 | Receipt not provided at time of affidavit |
| August 16, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model G30 GEN4 45 auto pistol | BXSS764 | Receipt not provided at time of affidavit |
| August 18, 2022 | Shepard Arms (N96W15508 County Line Road, Germantown, Wisconsin) | Glock Model G19 Gen5 9mm caliber pistol | BWSC900 | $647.99 |
| August 18, 2022 | Shepard Arms (N96W15508 County Line Road, Germantown, Wisconsin) | Glock Model G21 .45acp caliber pistol | AGSH551 | $655.99 |

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| August 22, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Anderson Manufacturing AM-15 multi-caliber receiver | 22015125 | Receipt not provided at time of affidavit |
| August 22, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model 19 Gen5 9mm caliber pistol | BXXZ334 | Receipt not provided at time of affidavit |
| August 31, 2022 | Shepard Arms (N96W15508 County Line Road, Germantown, Wisconsin) | Glock Model G30 Gen4 .45acp caliber pistol | BBGH198 | $510.00 |
| September 2, 2022 | Shepard Arms (N96W15508 County Line Road, Germantown, Wisconsin) | Century Arms Model Mini Draco 7.62x39mm caliber pistol | 22PG-4778 | $1,065.54 |
| September 5, 2022 | Elkhorn Gun Barrel (N7019 US 12, Elkhorn, Wisconsin) | Glock Model 23 .40S&W caliber pistol | BXDK891 | Receipt not provided at time of affidavit |
| September 5, 2022 | Elkhorn Gun Barrel (N7019 US 12, Elkhorn, Wisconsin) | Glock Model 29 Gen4 10mm caliber pistol | BVYA117 | Receipt not provided at time of affidavit |

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| September 5, 2022 | Elkhorn Gun Barrel (N7019 US 12, Elkhorn, Wisconsin) | Taurus Armas/Taurus Model PT111 G2A G2C 9mm caliber pistol | ADD265307 | Receipt not provided at time of affidavit |
| September 9, 2022 | Elkhorn Gun Barrel (N7019 US 12, Elkhorn, Wisconsin) | Smith & Wesson Model SD40 VE .40 S&W caliber pistol | FCRS | Receipt not provided at time of affidavit |
| September 9, 2022 | Elkhorn Gun Barrel (N7019 US 12, Elkhorn, Wisconsin) | Taurus Armas/Taurus Model G3 9mm caliber pistol | ADH561592 | Receipt not provided at time of affidavit |
| September 9, 2022 | Elkhorn Gun Barrel (N7019 US 12, Elkhorn, Wisconsin) | Taurus Armas/Taurus, Model G2C 9mm caliber pistol | PT111G2A | Receipt not provided at time of affidavit |
| September 11, 2022 | Cabela's #418 (1 Cabela Way, Richfield, Wisconsin) | Glock Model 30 pistol .45 auto caliber | BYAN687 | $569.00 |
| September 11, 2022 | Cabela's #418 (1 Cabela Way, Richfield, Wisconsin) | Glock Model 29 GEN4 10mm auto caliber pistol | BYAH594 | $599.00 |
| September 14, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model multi-caliber lower receiver | BVVM223 | Receipt not provided at time of affidavit |

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| September 21, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model GF26-3C multi-caliber frame | BVVM216 | Receipt not provided at time of affidavit |
| September 26, 2022 | Shepard Arms (N96W15508 County Line Road, Germantown, Wisconsin) | Glock Model G23 .40 S&W caliber pistol | BYGH497 | $657.99 |
| October 4, 2022 | Shepard Arms (N96W15508 County Line Road, Germantown, Wisconsin) | Taurus Model G3 9mm caliber pistol | ADC108708 | $339.99 |
| October 7, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Century Arms, Model VSKA 7.62x39 caliber pistol | SV7P009295 | Receipt not provided at time of affidavit |
| October 7, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model G19 Gen5 9mm caliber pistol | BXXZ335 | Receipt not provided at time of affidavit |

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| October 7, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Glock Model G30 Gen4 .45acp caliber pistol | BXSS343 | Receipt not provided at time of affidavit |
| October 12, 2022 | Paladin Protection Armory (7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin) | Taurus Model G2c 9mm caliber pistol | ADE336808 | See footnote[2] |
| October 12, 2022 | Jalensky's Outdoors & Marine (5307 Green Bay Road, Kenosha, Wisconsin) | Taurus Model TH9 9mm caliber pistol | ADC071395 | See footnote |

[2] On October 12, 2022, AIKENS completed the Firearms Transaction Record (ATF Form 4473) to purchase a Taurus Model G2c 9mm caliber pistol bearing serial number ADE336808 from Paladin Protection Armory located at 7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin. While inside the store, an employee asked AIKENS about an incoming www.gunbroker.com transfer for AIKENS through the federal firearms licensee. The employee asked AIKENS what was ordered, and AIKENS responded by stating in substance: "I don't know." AIKENS then appeared to scroll through his phone. AIKENS then stated he purchased Glock frames. The federal firearms licensee delayed the transfer of this firearm, so this firearm has not been transferred to AIKENS.

| PURCHASE DATE | FEDERAL FIREARMS LICENSEE | FIREARM | SERIAL NUMBER | PAYMENT |
|---|---|---|---|---|
| October 12, 2022 | Jalensky's Outdoors & Marine (5307 Green Bay Road, Kenosha, Wisconsin) | Glock Model G44 .22lr caliber pistol | AGR1813 | See footnote[3] |

12. In addition to the known firearms purchases listed in the table above, case agents contacted the Dam Road Gun Shop located at N4596 Dam Road, Delavan, Wisconsin. Employees at Dam Road Gun Shop informed case agents that AIKENS has purchased another approximately 66 firearms between August 2022 and October 2022. However, Dam Road Gun Shop does not maintain its Firearms Transaction Records (ATF Form 4473) in digital format, so they have not yet provided those records to the ATF.

13. On October 11, 2022, I interviewed the owner of Paladin Protection Armory located at 7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin, who is also a firearms instructor. The owner said that he was aware of purchases by Sanantonio AIKENS in the past. The owner stated that AIKENS would usually ask several questions when coming into the store. The owner did not

[3] On October 12, 2022, AIKENS completed the Firearms Transaction Record (ATF Form 4473) to purchase a Taurus Model TH9 9mm caliber pistol bearing serial number ADC071395 and a Glock Model G44 .22lr caliber pistol bearing serial number AGR1813 from Jalensky's Outdoors & Marine located at 5307 Green Bay Road, Kenosha, Wisconsin. The federal firearms licensee delayed the transfer of these firearms, so these firearms have not been transferred to AIKENS.

find this unusual, as Paladin Protection Armory has seen an influx of new gun owners recently. The owner said that AIKENS would come into the store and browse several guns and did not appear to be looking for any specific make or model. The owner does not recall any one being with AIKENS during the purchases. The owner stated that he has helped AIKENS, and AIKENS is sometimes hard to understand because of mumbling. The owner stated AIKENS has purchased Glock frames and AR-15 lower receivers from Paladin Protection Armory. After ordering the AR-15 receivers, AIKENS asked if he could see how the rifles are assembled. The owner said that it is not uncommon for customers to ask how the rifles are assembled.

14. On October 11, 2022, I also interviewed an employee of Shepard Arms, located at N96W15508 County Line Road, Germantown, Wisconsin. The employee has helped Sanantonio AIKENS in the past with firearm purchases from the business. The employee said that AIKENS appeared to be "nervous" when first coming into the business. AIKENS asked several questions about firearms and stated he was purchasing his first firearm. AIKENS also stated the firearm was for "self-defense." The employee did not recall anyone coming into the business with AIKENS.

15. The employee was working on September 11, 2022 when AIKENS came to Shepard Arms to purchase a firearm. The employee observed an odor of marijuana on AIKENS. AIKENS attempted to purchase two firearms with two different "stacks of cash." AIKENS was told to leave the business and went out to the parking lot. AIKENS was observed in a vehicle by a business patron who was participating in a concealed carry class at the business. AIKENS later left the parking lot in a second vehicle that followed the vehicle he was previously observed in.

The Germantown Police Department was contacted and responded to the scene. I obtained the call detail report (CDR) from the Germantown Police Department, which states: "[Redacted name of employee] 2-415-5150 from Shepard Arms reported they asked a subject to leave since he smelled like marijuana, that subject has been sitting in a vehicle in the parking lot. Black Toyota SUV, H/M red / black pull over. Has been sitting there for 30 minutes and more then 1 person in the vehicle."

16. On October 12, 2022, Special Agent Richard Connors of the ATF, Task Force Officer Joshua Zeller of the ATF, and members of the Kenosha County Significant Investigations Unit conducted surveillance on Sanantonio AIKENS. That day, Acting Resident Agent in Charge Matt Ernst of the ATF received a phone call from an employee of Jalensky's Outdoors and Marine, Inc., a federal firearm licensee located at 5307 Green Bay Road, Kenosha, Wisconsin. The employee advised ATF that AIKENS was inside of Jalensky's Outdoors and Marine, had just purchased two firearms, and was awaiting to pick them up. The employee advised he would tell AIKENS he was "delayed" for unspecified reasons.

17. On October 12, 2022, AIKENS completed the Firearms Transaction Record (ATF Form 4473) to purchase a Taurus Model TH9 9mm caliber pistol bearing serial number ADC071395 and a Glock Model G44 .22lr caliber pistol bearing serial number AGR1813 from Jalensky's Outdoors & Marine located at 5307 Green Bay Road, Kenosha, Wisconsin. The federal firearms licensee delayed the transfer of these firearms, so these firearms have not been transferred to AIKENS.

18. Case agents observed a gray Ford Focus bearing Illinois temporary license plate 298AB882, which did not list to the vehicle. At approximately 3:35 p.m., case agents observed AIKENS exit Jalensky's and get into the rear driver side seat of the gray Ford Focus. At 3:42 p.m., the grey Ford Focus departed east on Highway 52.

19. Case agents later obtained the Firearms Transaction Record (ATF Form 4473) for AIKENS attempted purchase at Jalensky's Outdoors and Marine. That ATF Form 4473 is for a Taurus Model TH9 9mm caliber pistol bearing serial number ADC071395 and a Glock Model G44 .22LR caliber pistol bearing serial number AGRL813.

20. At 3:48 p.m., the grey Ford Focus turned into a parking lot and parked at a Little Caesar's next to Paladin Protection Armory, located at 7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin, another federal firearms licensee. The grey Ford Focus parked out of sight of the federal firearms licensee, as AIKENS entered Paladin Protection Armory. At 3:52 p.m., officers observed an additional two black males and one black female in the suspect vehicle. At 4:01 p.m., Case agents observed AIKENS inside of Paladin Protection Armory looking at several firearms while using his cellphone. At 4:14 p.m., AIKENS left Paladin and walked towards Little Caesar's. The grey Ford Focus pulled up to the Little Caesar's, and AIKENS got into the vehicle.

21. On October 12, 2022, AIKENS completed the Firearms Transaction Record (ATF Form 4473) to purchase a Taurus Model G2c 9mm caliber pistol bearing serial number ADE336808 from Paladin Protection Armory located at 7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin. While inside the store, an employee asked AIKENS about an incoming

www.gunbroker.com transfer for AIKENS through the federal firearms licensee. The employee asked AIKENS what was ordered, and AIKENS responded by stating in substance: "I don't know." AIKENS then appeared to scroll through his phone. AIKENS then stated he purchased Glock frames. The federal firearms licensee delayed the transfer of this firearm, so this firearm has not been transferred to AIKENS.

22. At this point, the owner of Paladin Protection Armory advised case agents of AIKENS's attempted purchase and said that they would tell and advised him AIKENS attempted to purchase a Taurus handgun, model G2C, 9mm, bearing serial number ADE336808. Mr. Gard advised they would tell AIKENS he was "delayed."

23. AIKENS and the grey Ford Focus relocated to the McDonald's parking lot next to Paladin Protection Armory. The vehicle and occupants remined here and appeared to eat the food purchased outside of the vehicle. At about 30 minutes later, the grey Ford Focus and all of the occupants left the parking lot.

24. Case agents then coordinated a traffic stop of the grey Ford Focus based on the improper registration. After the vehicle left the McDonald's, the driver conducted several U-turns potentially to evade detection. A police officer with the Kenosha Police Department in a marked police vehicle conducted a stop of the vehicle at 5:02 p.m. at 8085 39th Avenue, Kenosha, Wisconsin, and identified the following individuals inside of the grey Ford Focus, in addition to AIKENS:

a. Micah I. VERA (DOB: 05/11/2005) with an address of 3004 Salem Boulevard, Zion, Illinois and a phone number of 773-467-1403.

b. Sean J. CONNER (DOB: 03/22/2004) with an address of 1904 Ezra Avenue, Zion, Illinois and a phone number of 224-944-2818.

c. Sarai N. GREEN (DOB: 03/18/2005) with an address of 2508 Gabriel Avenue, Zion, Illinois and a phone number of 847-445-3441.

25. AIKENS told the police officer that his address was 3004 Salem Boulevard, Zion, Illinois—the same address as VERA—and his phone number was 262-230-2518. This address, however, contradicts the address that AIKENS listed an all of the Firearms Transaction Records (ATF Form 4473) that case agents identified for AIKENS.

26. On October 13, 2022, Special Agent Richard Connors traveled to Dam Road Gun Shop, a federal firearms licensee located at N4596 Dam Road, Elkhorn, Wisconsin. Special Agent Connors spoke with the manager of Dam Road Gun Shop concerning Sanantonio AIKENS. The manager said that AIKENS had purchased approximately 66 firearms from their shop in the last two months. The manager said, however, that it would take some time to copy all of the ATF Form 4473s for the ATF, because the records are not stored digitally. The manager said that AIKENS arrived in a gold sedan with a messed up bumper and a red Saturn SUV. The manager stated that AIKENS usually just bought Glock, Ruger, and Taurus handguns. The manager said that they had not heard from AIKENS since he called and stated that he "lost his ID."

27. On October 13, 2022, Special Agent Connors traveled to Elkhorn Gun Barrel, a federal firearms licensee located at N7019 US-12, Elkhorn, Wisconsin. Special Agent Connors met with a sales associate and requested all firearms transaction records associated with AIKENS. The sales associate stated that AIKENS was no longer welcome at their store. The sales associate said that AIKENS would arrive in the store with 3 or 4 people at a time. The sales associate stated that AIKENS was continually on his cell phone while in their store. Another associate advised that he overheard AIKENS say something about the prices at Elkhorn Gun Barrel: "I spent thousands on guns in a month at Dam Road. I'm going to start coming here." The sales associate said that when they told AIKENS that he was no longer welcome at the store, AIKENS went outside and stood outside of a car with Illinois plates, and continually talked on his cell phone.

28. In the purchases from Elkhorn Gun Barrel, the business provides the purchaser with a "Customer Double Check Form." The form provides four statements for the purchaser to initial. Two of the statements are as follows: "The address on the above DL or State ID is current and the ID is valid." An additional statement on the form reads: "You are aware of what a straw purchase is and that a straw purchase is a felony in all 50 states!" In the forms provided by Elkhorn Gun Barrel, there appears to be an "S A" marking, the initials for Sanantonio AIKENS, by each statement and a copy of a Wisconsin Driver's License for Sanantonio AIKENS. I have set forth a copy of a "Customer Double Check Form" below:




## Customer Double Check Form

I certify that: (Initial Below)

SA_____The address on the above **DL or State ID** is **current** and the ID is valid. (A Wisconsin **DOT website print out** may **be used** to indicate a new address or expiration extension. Print out must be supplied by customer)

SA_____The serial number on your **firearm receiver matches your 4473 & your receipt.**

SA_____**You are aware of what a straw purchase is and that a straw purchase is a felony in all 50 states!**

SA_____**You have been provided with the following statement:**

**IF YOU LEAVE A LOADED FIREARM WITHIN THE REACH OR EASY ACCESS OF A CHILD YOU MAY BE FINED OR IMPRISONED OR BOTH IF THE CHILD IMPROPERLY DISCHARGES, POSSESSES OR EXHIBITS THE FIREARM.**

**DON'T LIE FOR THE OTHER GUY!**

29. I conducted a query of AIKENS in the ATF E-Trace system. The system provides law enforcement with initial purchaser information of firearms recovered across the world. I located five firearms traces linked to AIKENS. I noted a significantly low time-to-crime for these firearm traces. I am unaware of any records or reports showing that AIKENS reported any of these firearms stolen or lost. AIKENS is not a suspect in any of the crimes associated with the five traces; and, therefore, I suspect that AIKENS transferred his firearms to other people. The short time-to-crime between AIKENS' purchases and the recovery of those firearms at crime scenes could be indicative of firearm transfers directly from the purchaser to another person. Summaries of those traces are provided below.

30. AIKENS' Glock Model 17 9mm caliber pistol bearing serial number BVGC793 that was purchased on July 11, 2022 was recovered by the Pleasant Prairie Police Department on July 14, 2022. On that date, the firearm was recovered in the possession of Darrion ALLEN (DOB: 04/03/2003) with an address of 4914 36th Avenue, Unit #4, Kenosha, Wisconsin. ALLEN was arrested by the Pleasant Prairie Police Department for felon in possession of a firearm, possession of marijuana, and a probation/parole hold. The recovery took place during a traffic stop at 1817 104th Street, Pleasant Prairie, Wisconsin. The tracing documents also indicated a gang affiliation to "CTN" or "Cut Throat Nation." The firearm had a three day time- to-Crime.

31. AIKENS' Aero Precision Model X15 .556 caliber rifle bearing serial number X508188 that was purchased on August 7, 2022 was recovered at 2725 Glen Flora, Apartment 709, Waukegan, Illinois on September 12, 2022. The firearm was found in the possession of

Sylvester L. MILLER (DOB: 08/24/1996). MILLER was arrested by the Waukegan Police Department for aggravated assault, discharge of a firearm, aggravated unlawful use of a weapon, and resisting a peace officer. The tracing documents also identified a gang affiliation of "4 Corner Hustler." The tracing information identified the purchaser as "Sanantenio Aikens"; however, the address, date of birth, driver's license number, and last four of the social security number appear to be the same as Sanantonio AIKENS. The firearm had a 36 day time-to-crime.

32. AIKENS' Century Arms Model Mini Draco 7.62mm caliber pistol bearing serial number 22PG-4778 that was purchased on September 2, 2022, was recovered at 2513 20th Street, Zion, Illinois on September 11, 2022. The firearm was recovered from Christian Zuniga (DOB: 12/21/1990). As a result of the incident, Zuniga was arrested for aggravated unlawful use of a weapon and domestic battery. The firearm had a 9 day time-to-crime.

33. AIKENS' gun case for a Glock Model 29 10mm caliber pistol bearing serial number BYAH594 that was purchased on September 11, 2022, was located inside a vehicle without the firearm by the Zion Police Department on September 28, 2022.

34. AIKENS' Glock 23 Model 23 Gen5 .40 caliber pistol bearing serial number BYGH497 that was purchased on September 26, 2022, was recovered on September 28, 2022, when FBI participated in a controlled purchase using a confidential source to buy the firearm. The firearm had a 2 day time-to-crime.

35. On October 13, 2022, I conducted a query to determine whether AIKENS has or had a Federal Firearms License. That query showed that AIKENS does not have Federal Firearms

License registered in his name, suggesting that he is engaged in the business of selling firearms without a license.

36. On October 13, 2022, I conducted an Illinois Firearm Owner Identification (FOID) Card inquiry for AIKENS. AIKENS does not appear to have a State of Illinois FOID card.

37. The manager of Paladin Protection Armory informed case agents that some of AIKENS' transfers to his gun shop were from the online firearm brokerage website "Gunbroker.com." This website connects individuals to federal firearms licensees across the United States to purchase firearms. The federal firearms licensees receive payment for the firearm, and then ship the firearm to a local federal firearms licensee of the purchaser's choosing to complete a background check and ATF Form 4473. I am aware that these orders must be placed online using an account with a username and password.

38. During many of the purchases by AIKENS, he listed the phone number 262-230-2518. This phone number's carrier information was found to be Onvoy Spectrum, LLC. The information taken from the carrier's website indicated "Onvoy, LLC (also known as Intelliquent) provides telecommunication services in the form of network-based voice and messaging services to wireless, cable, carrier, and communication service providers (Viber, WhatsApp, Talkatone, TextFree, and more). I know that this phone number is connected to the Cash App profile "Sanantonio Aikens" with the Cash App username of "$SanantonioAikens."

39. On October 17, 2022, AIKENS contacted Jalensky's and inquired about the status of his firearms. At 12:49 p.m., Jalensky's contacted AIKENS and told him that he could pick up

the firearms that afternoon. AIKENS suggested to Jalensky's that he was on his way to pickup the firearms. Case agents are aware that Zion, Illinois is directly across the state border from the Eastern District of Wisconsin and that Kenosha, Wisconsin is within the Eastern District of Wisconsin. On October 17, 2022, AIKENS also contacted Paladin and inquired about the pickup of his firearms.

## TECHNICAL TERMS

40. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

41. As described above and in Attachment B, this application seeks permission to search for records that might be found on Sanantonio AIKENS's person and any effects, bags, or

containers on AIKENS's person or within AIKENS's immediate control or reach, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

42. *Probable cause.* I submit that if a computer or storage medium is found on AIKENS's person or in any effects, bags, or containers on AIKENS's person or within AIKENS's immediate control or reach, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users

typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

43. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium on AIKENS's person or within AIKENS's immediate control or reach because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution"

evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore,

contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer to deal in firearms without a license, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

44. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage

media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

45. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted

scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

**BIOMETRIC UNLOCK**

46. The warrant I am applying for would permit law enforcement to obtain from Sanantonio AIKENS the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

47. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

48. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home"

button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

49. If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

50. In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

51. As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the

device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

52. I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

53. Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of Sanantonio AIKENS to the fingerprint scanner of the device; (2) hold the device in front of the face of Sanantonio AIKENS and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

## CONCLUSION

54. I submit that this affidavit supports probable cause for a warrant to search the person of Sanantonio Aikens (DOB: 11/05/2000) and any effects, bags, or containers on AIKENS's person or within AIKENS's immediate control or reach described in Attachment A and seize the items described in Attachment B.

**ATTACHMENT A**

*Property to be searched*

The property to be searched is the person of Sanantonio Aikens (DOB: 11/05/2000) and any effects, bags, or containers on AIKENS's person or within AIKENS's immediate control or reach.

## ATTACHMENT B

*Property to be seized*

1. All records relating to violations of 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(a)(6) (straw buying); 18 U.S.C. § 922(g)(3) (possession of a firearm or ammunition by prohibited person), 18 U.S.C. § 922(d) (knowingly sell or give to prohibited person) and 18 U.S.C. § 371 (conspiracy), those violations involving Sanantonio AIKENS (DOB: 11/05/2000) and occurring after April 1, 2020, including:

a. ATF Forms 4473, firearms, firearm boxes, bipods, tripods, receipts and any records related to firearms, firearms accessories, ammunition, financial documents that show a transfer of proceeds of the above schemes, computers, electronics capable of storage, communication, and/or internet access, and cellphones;

b. lists of contacts and any identifying information;

c. photographs, videos, or other media storage connected to firearms;

d. any information about types, amounts, and prices of firearms purchased/sold;

e. any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

f. all bank records, checks, credit card bills, account information, and other financial records related to firearms commerce;

g. any and all financial records connected to the purchase/sale of firearms and any correspondence between suspects and other firearms sellers and/or purchasers;

h. proceeds of firearm trafficking activities, including United States currency;

i. all bank records, checks, credit card bills, account information, and other financial records, documents, statements, or other evidence related to financial accounts and investment funds;

j. personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm trafficking activities;

k. records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

l. Records and information relating to a conspiracy to violate the laws of the United States, including the scope, manner, means, objects, overt acts, and identity of any co-conspirators;

m. Records and information relating to the dealing in firearms without a license;

n. Records and information relating to drug use, including but not limited to the possession and use of marijuana;

o. Records and information relating to the transfer of firearms to a prohibited person;

p. Records and information about making a false statement to a federal firearms licensee;

q. Records and information relating to the identity, residence, or location of Sanantonio Aikens;

2. Computers or storage media used as a means to commit the violations described above.

3. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

i. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

ii. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the lack of such malicious software;

iv. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

v. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

vi. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

vii. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

viii. evidence of the times the COMPUTER was used;

ix. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

x. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

xi. records of or information about Internet Protocol addresses used by the COMPUTER;

xii. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

xiii. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

During the execution of the search described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of Sanantonio Aikens to the fingerprint scanner of the device; (2) hold a device found in front of the face of Sanantonio Aikens and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.